In re JACKSON BROOK INSTITUTE,
INC., Debtor–Appellee.

BANCBOSTON REAL ESTATE
CAPITAL CORPORATION,
Plaintiff–Appellee,

v.

JBI ASSOCIATES LIMITED
PARTNERSHIP, Defendant–
Appellant.

No. Civ. 98–MC–80–P–C.

United States District Court,
D. Maine.

Nov. 24, 1998.

Roger Clement, Verrill & Dana, Portland, ME, for debtor.

Robert J. Keach, Bernstein, Shur, Sawyer & Nelson, Portland, ME, for plaintiff.

Daniel L. Cummings, Norman, Hanson & Detroy, Portland, Maine, John L. Whitlock, Palmer & Dodge, LLP, Boston, MA, for JBI Associates Limited Partnership.

John C. Walker, John C. Walker & Associates, Windham, ME, for Running Hill Associates Limited Partnership.

## MEMORANDUM OF DECISION AND ORDER

CARTER, District Judge.

JBI Associates Limited Partnership ("Associates") appeals the order of the United States Bankruptcy Court for the District of Maine denying its Motion to Abstain, or in the Alternative to Remand, entered on July 24, 1998 ("the Bankruptcy Order"). Associates is a limited partnership that built a hospital with funds borrowed from BancBoston Real Estate Capital Corporation ("BancBoston") which is now seeking to foreclose in the Maine Superior Court the mortgage it was holding as security for the debt. The state foreclosure action named Associates as a party defendant and Jackson Brooks Institute ("the Debtor") a party-in-interest. The Debtor subsequently filed for bankruptcy and removed the state foreclosure action to bankruptcy court to be heard as part of its pending Chapter 11 action. Shortly thereafter, Associates filed a motion in bankruptcy court requesting that the court abstain or, in the alternative, remand the state foreclosure action to state court. The bankruptcy court denied Associates's motion. On appeal, Associates argues principally that the bankruptcy court erred in refusing to: (1) abstain from hearing the state foreclosure action pursuant to 28 U.S.C. § 1334(c)(2)[1], and, in the alternative, (2) remand, pursuant to section 1452(b), the state foreclosure action. Specifically Associates challenges the bankruptcy court's determination that the state

---

1. The Court will refer to statutory sections by providing the section number. All sections come from title 28 unless otherwise indicated.

foreclosure action is a core issue in the Debtor's bankruptcy proceeding.

This appeal requires the Court to determine the following: (1) Whether it has jurisdiction to hear the appeal pursuant to section 158(a) and (2) whether the removed state foreclosure action is a core proceeding in the Debtor's bankruptcy action. This Court holds that it does not have jurisdiction to hear the appeal pursuant to section 158(a)(1) as an appeal from a final order. However, this Court will grant leave to appeal the Bankruptcy Order pursuant to section 158(a)(3). The Court finds that, under the circumstances of this case, the remanded state foreclosure action is a core proceeding in the Debtor's bankruptcy proceeding. Mandatory abstention was not, therefore, required. In addition, this Court finds no equitable grounds requiring remand. This Court also concludes that the bankruptcy court did not abuse its discretion in deciding not to abstain. The Court affirms the bankruptcy court's decision.

## I. BACKGROUND

### A. Creation of Obligations.

On or about May 11, 1983, Associates obtained construction and permanent financing from Casco Northern Bank, N.A. ("Casco") to build an acute care psychiatric hospital. The project was organized into a three-party transaction. The hospital was built on land owned by Running Hill Associates Limited Partnership ("Running Hill"), and Running Hill has maintained its fee simple interest in the real estate at all times. Associates entered into a ground lease with Running Hill, obtained the financing to construct the hospital, and, in turn, subleased the land and the hospital to the Debtor. JBI Associates Limited Partnership's Notice of Appeal and Conditional Motion for Leave to Appeal, ("Notice

of Appeal") (Docket No. 1) at 4; Tape of July 15, 1998, hearing before Bankruptcy Judge Goodman ("Taped Proceeding"). The Debtor administered the hospital. *Id.* The promissory note for the permanent financing in the amount of $4 million was secured by a mortgage encumbering the land owned by Running Hill, the hospital, and a collateral assignment of a lease of the property ("the Sublease") by Associates to the Debtor. Notice of Appeal at 4. Casco's note has now been assigned to BancBoston. *Id.*

Under the terms of the Sublease, the Debtor, which operates the hospital, is obligated to pay monthly basic rent and additional rent, taxes, insurance, maintenance, and other expenses of the property to Associates. Notice of Appeal at 5. The arrangement was structured so that the Debtor's payment of the basic rent enabled Associates to fulfill its payment obligations under the Casco note. *Id.* In 1999, the Debtor is required under the terms of the Sublease to offer to purchase the leased premises for $10 million or its fair market value, whichever is greater.[2] Taped Proceeding. Under the ground lease between Associates and Running Hill, Associates is required to make a mandatory offer to purchase the premises from Running Hill in 1999. *Id.* Thus, under the terms of the agreement, the Debtor must make an offer to purchase the land from Associates in 1999. The mandatory option under the lease to purchase the hospital is an asset of the Debtor's estate.

### B. The Foreclosure Action.

On or about October 29, 1997, BancBoston commenced a foreclosure action for the purposes of exercising its rights under the Casco note and mortgage, including foreclosure of its interest in the property.[3] *Id.* In its foreclosure complaint, BancBoston named Run-

---

2. All parties seem to agree that the real estate is not worth $10 million. Taped Proceeding.

3. With intermittent exceptions, the Debtor paid rent when due to Associates from 1984 until 1990. Notice of Appeal at 5. Associates, in turn, paid the required debt service to Casco. *Id.* In 1990, Casco demanded and received an assignment of the debt service component of the basic rent and direct payment of the basic rent. *Id;* Motion of JBI Associates Limited Partnership to

Abstain or In the Alternative, Remand Case ("Motion to Abstain") (Docket No. 1, Exhibit A) at 3. Therefore, from 1990 until mid–1997, Casco, and later BancBoston, received debt service payments directly from the Debtor. *Id.* As of November 1997, Associates's mortgage debt had been reduced from $4 million to $2,034,976.23. *Id.* The Debtor, however, stopped paying rent altogether in 1997. *Id.*

ning Hill, Associates, the Debtor, and other interested parties. *Id;* Taped Proceeding.

## C. The Bankruptcy Action.

The Debtor filed a voluntary chapter 11 petition for bankruptcy pursuant to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330, on March 27, 1998, several months after the foreclosure action was commenced against the Debtor and Associates. Notice of Appeal at 6. Pursuant to the April 9, 1998, Order Requiring Performance Under Section 365(d)(3), Debtor is required to pay all rent due post-petition, with certain exceptions not relevant hereto, directly to BancBoston.

On or about May 20, 1998, with the consent and support of the Debtor, the bankruptcy court entered an order granting BancBoston's motion for relief from the automatic stay. *Id.* The order authorized BancBoston to recommence prosecution of the foreclosure action. *Id.* In pleadings filed in connection with its motion for relief from the stay, Banc-Boston agreed under a Non–Disturbance, Attornment and Subordination Agreement ("Non–Disturbance Agreement") that if the Debtor is not in terminable default under the lease, BancBoston shall not disturb the lease or the rights of the Debtor under the lease. Furthermore, any foreclosure sale will be made subject to the lease. *Id;* Taped Proceeding.

## D. Removal of the Foreclosure Action.

On or about June 8, 1998, the Debtor removed the foreclosure action commenced by BancBoston against the Debtor and Associates to the United States Bankruptcy Court for the District of Maine ("Removed Foreclosure Action"). *Id;* BancBoston's Motion to Dismiss Appeal for Lack of Jurisdiction and Answer to Conditional Motion for Leave to Appeal, ("Motion to Dismiss") (Docket No. 2) at 2. Therein, the Debtor asserted that the

Removed Foreclosure Action is a core matter and, in the alternative, consented to entry of final orders by the bankruptcy court if it found the Removed Foreclosure Action to be a noncore matter. *Id.* Both BancBoston and Associates filed separate statements pursuant to Fed.R.Bankr.P. 9027(e). In its statement, BancBoston consented to entry of final orders and a judgment by the bankruptcy court. *Id.* On the other hand, Associates denied that the Removed Foreclosure Action was a core proceeding and stated that it did not consent to entry of final orders or a judgment by the bankruptcy court. *Id.* Associates subsequently filed the instant Motion to Abstain, asking the bankruptcy court to abstain from hearing the Removed Foreclosure Action pursuant to section 1334(c)(2) (mandatory abstention) or pursuant to section 1334(c)(1) (discretionary abstention). Motion to Abstain at 1. The Motion to Abstain further requested the bankruptcy court to remand the Removed Foreclosure Action to the state court upon equitable grounds under section 1452(b). *Id.*

At a hearing held on July 15, 1998, Bankruptcy Judge Goodman denied the abstention motion and concluded that the Removed Foreclosure Action was a core proceeding pursuant to section 157(b).[4] Taped Proceeding. In reaching this conclusion, the bankruptcy court found that mandatory abstention section 1334(c)(2) did not apply to the Removed Foreclosure Action and that Associates had failed to establish grounds for discretionary abstention under section 1334(c)(1) or for remand under section 1452(b). *Id.*

## E. This Appeal.

On August 3, 1998, pursuant to section 158(a), Associates appealed the Bankruptcy Order refusing to abstain or remand the Removed Foreclosure Action to the superior court. Associates timely filed Notices of Appeal.[5] Pursuant to Fed.R.Bankr.P. 8001(c),

---

4. The Bankruptcy Order was entered on the bankruptcy court's docket on July 24, 1998.

5. Both a Notice of Appeal and a Motion for Leave to File an Interlocutory Appeal were filed in this case. A party takes appeal of a section 158(a)(1) final order as of right by filing a timely notice of appeal pursuant to Fed.R.Bankr.P.

8001(a). Appeal of a section 158(a)(3) interlocutory order or decree is to be taken by leave of court. Such an appeal is taken by filing a motion for leave to file an interlocutory appeal pursuant to Fed.R.Bankr.P. 8003(a). Because Associates argues both that this Court has appellate jurisdiction because the Bankruptcy Order is a

Associates filed a Statement of Election requesting the appeal be heard by a district court pursuant to section 158(c)(1) rather than by the bankruptcy appellate panel. Statement of Election (Docket No. 1).

Associates seeks leave to appeal the Bankruptcy Order to the extent it determined the following:

 (i) that the foreclosure action was a core proceeding;

 (ii) that abstention by the bankruptcy court with respect to the adversary proceeding is not mandatory or appropriate, pursuant to 28 U.S.C. § 1334(c)(1), (2);

 (iii) that it would not remand the adversary preceding, pursuant to 28 U.S.C. § 1452(b);

 (iv) that only a portion, if any, of the foreclosure action was removed to the bankruptcy court, pursuant to 28 U.S.C. § 1452(a);

 (v) that the removal was procedurally defective pursuant to Fed.R.Bankr.P. 9027(a)(1); and

 (vi) that it did not certify its proposed findings and conclusions of law to the district court.

Notice of Appeal at 4.[6]

On August 18, 1998, BancBoston filed a Motion to Dismiss Appeal for Lack of Jurisdiction and Answer to Conditional Motion for Leave to Appeal. Pursuant to Rule 8003(a). Motion to Dismiss (Docket No. 2). On the same day, the Debtor filed its own Motion to Dismiss Appeal for Lack of Jurisdiction and Response to Conditional Motion for Leave to Appeal. Motion to Dismiss (Docket No. 3).[7]

---

section 158(a)(1) *final* order and, in the alternative, because it is a section 158(a)(3) *interlocutory* order, the appeal is properly filed.

**6.** Associates also argues that BancBoston's motion to dismiss the appeal is procedurally flawed. It argues that if the Court determines that the Bankruptcy Order is appealable as of right, a motion to dismiss the appeal is groundless, and on the other hand, if the Court determines that the Bankruptcy Order is not appealable as of right but that leave to appeal is appropriate, the motion to dismiss must be denied as premature because leave to appeal has not yet been granted by this Court. However, the Court will deter-

## II. JURISDICTION

Two questions regarding this Court's jurisdiction to hear this appeal must be discussed. Prior to resolving whether this Court has appellate jurisdiction under 28 U.S.C. § 158(a), appellate review must first be cleared under 28 U.S.C. § 1334(d) and 28 U.S.C. § 1452(b), sections restricting appellate review of abstention and remand motions. *See Schuster v. Mims (In the Matter of Rupp & Bowman Co.),* 109 F.3d 237, 239–40 (5th Cir.1997) (examining whether section 1334(d) permits the district court's review of an order refusing to abstain and then deciding whether jurisdiction exists pursuant to section 158); *Personette v. Kennedy (In re Midgard Corp.),* 204 B.R. 764, 767–68 (10th Cir. BAP 1997) (same). Hence, this Court will discuss whether sections 1334(d) and 1452(b) bar appellate review of the Bankruptcy Order and then determine whether this Court has jurisdiction to hear the appeal under section 158.

### A. 28 U.S.C. §§ 1334(d), 1452(b).

◼ Sections 1334(d) and 1452(b) of title 28 limit appellate review of abstention and remand orders. Section 1334(d), governing abstention in bankruptcy cases, as amended, provides that,

[a]ny decision to abstain or not to abstain made under this subsection (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title. . . .

28 U.S.C. § 1334(d).[8] In addition, section 1452(b), governing remand of claims in bank-

---

mine appellate jurisdiction based on the contentions submitted by both parties in this action.

**7.** Because the Debtor asserted that it adopts the recitation of facts and legal arguments set forth in BancBoston's Motion to Dismiss, this Court will refer to the papers filed by both the Debtor and BancBoston as the "Motion to Dismiss" and to the Debtor and BancBoston collectively as BancBoston.

**8.** The former section 1334(c)(2) of title 28 now replaced by section 1334(d), applicable to cases commenced before October 22, 1994, provided

ruptcy cases, states in relevant part, "[a]n order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 or this title or by the Supreme Court of the United States under section 1254 of this title...." 28 U.S.C. § 1452(b).

The bankruptcy court refused to abstain under sections 1334(c)(2) and 1334(c)(1). Furthermore, it refused to remand pursuant to section 1452(b). According to the plain language of section 1334(d), the bankruptcy court's decision not to abstain pursuant to section 1334(c)(2) is reviewable by a court of appeals. 28 U.S.C. § 1334(d) (excepting decisions to abstain or not to abstain pursuant to section 1334(c)(2) from its appellate bar). On the other hand, the decisions refusing to abstain pursuant to section 1334(c)(1) or to remand pursuant to section 1452(b) appear, at first glance, to be barred from appellate review. However, this Court is not the "court of appeals" referred to in sections 1334(d) and 1452(b) and, therefore, is not barred from considering the Bankruptcy Order in its entirety. The "court of appeals" referred to in sections 1334(d) and 1452(b) has its jurisdiction by virtue of sections 158(d), 1291, or 1292. A district court's jurisdiction, on the other hand, arises under section 158(a). *See In Re Midgard Corp.,* 204 B.R. at 768 (holding that bankruptcy appellate panels are not "courts of appeals" referred to in sections [1334(d) ] and 1452(b)) (*citing* 136 Cong.Rec. S 17, 580 (daily ed. Oct. 27, 1990) (remarks Sen. Grassley) (remand and abstention orders are subject to review by the district court, but not circuit court, of appeals)). Accordingly, the jurisdiction of this Court is not limited by sections 1334(d) and 1452(b). Finding no affirmative bar to appellate review, by this Court, of the Bankruptcy Order refusing to abstain or remand, the Court must now determine whether that review may be obtained by appeal under section 158(a).

## B. 28 U.S.C. § 158.

Section 158 provides for two courses of appeal: (1) A party may appeal as a matter of right "... from final judgments, orders, and decrees [of bankruptcy courts]," or (2) the district court has discretion to permit appeals from "interlocutory orders and decrees [of bankruptcy courts]." 28 U.S.C. § 158(a)(1), (3).[9] The statutes and rules governing such appeals do not provide district courts with standards for examining appeal requests. *See* 28 U.S.C. § 158; Fed.Bankrupt.R. 8001, 8003; *Northeast Savings, F.A. v. Geremia (In re Kalian),* 191 B.R. 275, 277 (D.R.I.1996). Therefore, the Court looks to judicial interpretations of section 158(a) for guidance.

 A decision is ordinarily considered an immediately appealable order under section 1291 and section 158(a)(1) if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Quackenbush v. Allstate Insurance Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 1718, 135 L.Ed.2d 1 (1996) (*quoting Catlin v. U.S.,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). In *Quackenbush,* the Supreme Court clearly articulated two tests for determining whether an abstention or remand order is immediately appealable. *Quackenbush,* 517 U.S. at 712, 116 S.Ct. at 1718 (holding that an appeal is proper for review of a remand [and abstention] order where either of the conditions set forth in the alternate holdings of *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) is met); *Snodgrass v. Provident Life and Accident*

that "[a]ny decision to abstain or not to abstain made under this subsection is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title...." 28 U.S.C. § 1334(c)(2) (1993), amended by 28 U.S.C. § 1334(c)(2), (d) (Supp.1996). Thus, the former section prohibited review of all decisions to abstain and did not except decisions regarding mandatory abstentions. In this case, the Debtor's bankruptcy proceeding was filed on March 27, 1998, and it is, therefore, uncontested that the amended version, 28 U.S.C. § 1334(d), governs the decision in this case.

9. Section 158(a)(2) permits appeal from interlocutory orders and decrees issued under 11 U.S.C. § 1121(d) increasing or reducing the time periods referred to in section 1121 of such title. Section 158(a)(2) is not relevant to this appeal.

*Insurance Co.*, 147 F.3d 1163, 1165–66 (9th Cir.1998); *In re Midgard Corp.*, 204 B.R. at 769 n. 4; *see also Wolfson v. Mutual Benefit Life Ins.*, 51 F.3d 141, 144 (8th Cir.1995). First, an abstention order is appealable if it puts the litigants "effectively out of court" and has the effect "precisely to surrender jurisdiction of a federal suit to a state court." *Quackenbush*, 517 U.S. at 713, 116 S.Ct. at 1719. Second, an abstention order is reviewable on appeal if it fits within the narrow class of immediately appealable collateral orders. *Id.* (orders that do not meet the definition of finality, but satisfy the collateral order doctrine, are nevertheless appealable under section 1291); 1 *Collier Bankruptcy Manual* ¶ 5.07[3] (3d ed. rev. 1998) (the collateral order doctrine has been grafted onto the bankruptcy appellate system).

■ Associates does not contend, nor could it, that the bankruptcy court's refusal to abstain or to remand the Removed Foreclosure Action is a final decision in the sense that it ends the litigation and leaves the bankruptcy court with nothing more to do than execute judgment. Nor does Associates argue that the abstention order in this case effectively puts the litigants out of court. This argument is unavailable by definition of a refusal to abstain because such an order clearly does not end the litigation in federal court. Instead, Associates argues that the Bankruptcy Order fits into the narrow class of collateral orders which, although not meeting the strict definition of finality, are nevertheless immediately appealable.[10]

■ Orders may be considered "final" if they meet the requirements of the collateral order doctrine. *See, e.g., Quackenbush*, 517 U.S. at 710–12, 116 S.Ct. at 1718; *Digital Equip. Corp. v. Desktop·Direct, Inc.*, 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The collateral order doctrine is based on the recognition that,

> there exists a small class of decisions termed "collateral orders," "which finally determine claims of right separable from, and collateral to rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

*In re Bank of New England Corp.*, 218 B.R. at 649 (*citing Cohen*, 337 U.S. at 546, 69 S.Ct. at 1226).

■ The Supreme Court has articulated a model for identifying such collateral orders. To be appealable, the order must: (1) conclusively determine a disputed question that is completely separate from the merits of the action, (2) be effectively unreviewable on appeal from a final judgment, and (3) be too important to be denied review. *Quackenbush*, 517 U.S. at 713, 116 S.Ct. at 1719; *In re Midgard Corp.*, 204 B.R. at 768. As explained by a bankruptcy appellate panel for this circuit, the First Circuit's collateral order model is expanded to four prongs. *In re Bank of New England Corp.*, 218 B.R. at 649 n. 9 (holding that the First Circuit continues to employ a four-prong test despite the Supreme Court's three-prong analysis). Ac-

---

**10.** Associates asserts that the Court has jurisdiction under section 158(a)(1) pursuant to the collateral order doctrine. It is not clear under the case law whether the collateral order doctrine renders an order appealable as of right under section 158(a)(1) or is a basis upon which a court may grant leave to appeal pursuant to section 158(a)(3). *Compare Quackenbush*, 517 U.S. at 711, 116 S.Ct. at 1718 (holding order appealable under the collateral order doctrine, as of right pursuant to 28 U.S.C. § 1291, which confers jurisdiction over appeals from "final decisions" of the district courts); *United States Trustee v. Sorrells (In re Sorrells)*, 218 B.R. 580, 582 (10th Cir. BAP 1998) (holding bankruptcy court's order appealable as of right pursuant to 28 U.S.C. § 158(a)(1) under collateral order doctrine); *In*

*re Midgard Corp.*, 204 B.R. at 768 (same) *with Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 649 (1st Cir. BAP 1998) (holding order not appealable pursuant to 28 U.S.C. § 158(a)(3) under collateral order doctrine).

Whether an order is appealable pursuant to the collateral order doctrine pursuant to section 158(a)(1) or (a)(3) matters to litigants because the required procedure for filing an appeal differs for each section. Because Associates took appeal of a section 158(a)(1) final order by filing a Notice of Appeal and filed a Motion for Leave to ·File an Appeal of an Interlocutory section 158(a)(3) order, jurisdiction can be found under either section, and the Court need not determine in this action which method is proper.

cording to the First Circuit, to qualify as a collateral order, the order must: (1) conclusively determine; (2) an important legal question; (3) completely separate from the merits of the primary action; and (4) be effectively unreviewable on appeal from a final judgment on the remaining counts. *Id.* at 649 (citing cases) (noting that the courts applying the three-prong analysis fail to elaborate as to whether the order involves an important legal question). Appellants carry the burden and must make a showing on all elements to prevail. *Magic Circle Energy 1981—A Drilling Program v. Lindsey,* 889 F.2d 950, 954 (10th Cir.1989).

At the outset it should be noted that several courts have considered the question of whether a reviewing court has jurisdiction over a lower court's abstention or remand decision. A number of these courts held that such orders are immediately appealable. *E.g., Snodgrass,* 147 F.3d at 1166 (holding that district court's discretionary remand order was reviewable on appeal under collateral order doctrine); *Wolfson,* 51 F.3d at 144 (holding that district court's decision to abstain because of a parallel state proceeding was appealable under collateral order doctrine); *In re Midgard Corp.,* 204 B.R. at 769 (holding that bankruptcy court's order refusing to abstain was immediately appealable under collateral order doctrine); *Gentry v. Gentry (In re Gentry),* 207 B.R. 146, 149–50 (E.D.Ky.1997) (holding that mandatory abstention orders entered by bankruptcy courts are immediately appealable); *c.f. Holtzclaw v. State Farm Fire & Casualty (In re Holtzclaw),* 131 B.R. 162, 163 (E.D.Cal.1991) (reasoning that, by providing that mandatory abstention orders are not reviewable specifically by the court of appeals, 28 U.S.C. § 1334(c)(2) inferentially creates a right to appeal abstention orders to the district court); *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165, 167–68 (1st Cir.1987) (holding that the court of appeals did not have jurisdiction to hear appeal from district court decision reversing bankruptcy court's decision not to abstain). This authority, however, is not dispositive.

The majority of courts that found abstention or remand orders appealable collateral orders permitted appeal from an order remanding or abstaining from hearing an action and thus did not analyze the particular question presented in this case. On the other hand, the courts that allowed appeal from an order refusing to abstain or remand, like the Bankruptcy Order in this case, either did so without analysis or were faced with the issue prior to the Supreme Court's issuance of *Quackenbush* expounding on the collateral order doctrine with regard to remand orders. Furthermore, a recent case urges courts to assess the appealability of a bankruptcy court's order under the collateral order doctrine element by element. *See In re Bank of New England Corp.,* 218 B.R. at 649. Failure to establish any one of the elements results in the failure of jurisdiction. *See Foster Securities, Inc. v. Sandoz (In re Delta Services),* 782 F.2d 1267, 1272 (5th Cir.1986).

**1. Conclusive Determination of an Important Legal Question Completely Separate From the Merits.**

The first three elements of the collateral order model require the Bankruptcy Order to conclusively determine an important legal question that is completely separate from the merits of the action. An order conclusively determines an issue if, after the order, the issue does not remain open, unfinished, or inconclusive and the matter embraced in the decision is not a step toward final disposition of the merits of the case. *See Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225; *The Celotex Corp. v. AIU Insurance Co. (In re Celotex Corp.),* 187 B.R. 746, 749 (M.D.Fla. 1995) (holding that lower court's ruling conclusively resolved the dispute because it was not "tentative, informal or incomplete"). In addition, the First Circuit's bankruptcy appellate panel has most recently decided that an order resolves an important legal question if its resolution "holds precedential promise," meaning that the order grapples with "an important and unsettled question of controlling law." *In re Bank of New England Corp.,* 218 B.R. at 650.

The third element of the collateral order model requires that the order resolve

an issue completely separate from the merits of the underlying action. This element is met if the order resolves an issue that is "essentially unrelated to the merits of the main dispute" and is "capable of review without disrupting the [adversary proceeding]." *Id.* (*citing United States v. Sorren,* 605 F.2d 1211, 1213 (1st Cir.1979)).

The Bankruptcy Order appealed in this case meets the first three elements of the collateral order doctrine. The Bankruptcy Order conclusively determined the disputed issue of whether the bankruptcy court must or should abstain pursuant to section 1334(c) and whether it must remand the Removed Foreclosure Action pursuant to section 1452(b). There are no further issues or contingencies that await adjudication in the bankruptcy proceeding that will obviate the purpose of appealing the bankruptcy court's decision not to abstain. In addition, the bankruptcy court's determination in this case qualifies as presenting an important legal question for review. Namely, the issue of whether the Removed Foreclosure Action is a core or noncore proceeding and thus whether the bankruptcy court has jurisdiction to enter judgments in the Removed Foreclosure Action. *See* 28 U.S.C. § 1332(c); 28 U.S.C. § 157. Finally, whether the bankruptcy court should abstain is not an element of a dispute raised in the Debtor's bankruptcy proceedings. BancBoston has not set forth, and the Court does not find, any reason why resolution of the abstention question would disrupt the Debtor's underlying bankruptcy proceeding. Instead, resolution of the abstention question will resolve the question of the bankruptcy court's jurisdiction over the Removed Foreclosure Action and thus resolve an issue separate from the resolution of the claims in the Debtor's bankruptcy action.

Accordingly, this Court concludes that the Bankruptcy Order meets the first three elements of the collateral order doctrine. *See Quackenbush,* 517 U.S. at 714, 116 S.Ct. at 1719 (holding that the district court's decision to remand conclusively determined an important legal issue that was completely separate from the merits of the underlying action); *In re Midgard Corp.,* 204 B.R. at 769 (same);

*accord In the Matter of the Rupp & Bowman Co.,* 109 F.3d at 240 (holding that an order refusing to remand in a bankruptcy proceeding arguably determined conclusively a legal question completely separate from the merits).

## 2. Not Capable of Review On Appeal From Final Judgment.

 The fourth element of the collateral order doctrine requires that the Bankruptcy Order be effectively unreviewable on appeal from final judgment. The unreviewability prong has been equated to the threat of irreparable harm. *In re Bank of New England Corp.,* 218 B.R. at 651; *see also Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225 (reasoning that lower court's order was appealable because when the time came to appeal from final judgment, the rights of the appellants will have been lost, probably irreparably). An appellant is threatened by irreparable harm when denial of an appeal would "render impossible any review whatsoever." *United States v. Ryan,* 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971). BancBoston contends that Associates has not established that denial of leave to review the bankruptcy court's decision not to abstain will forever prevent its review. Motion to Dismiss at 6–8. The Court agrees that the Bankruptcy Order refusing to abstain does not satisfy this element.

The Supreme Court has squarely held that a lower court's decision *to abstain* from hearing a removed state court action is appealable as a collateral order because it is effectively unreviewable on appeal from final judgment in a federal court. *See Quackenbush,* 517 U.S. at 714, 116 S.Ct. at 1720 (holding that order abstaining from hearing and remanding a case to state court was not effectively reviewable on appeal for purposes of the collateral order analysis because "it [would] not be subsumed in any other appealable order entered by the District Court.") Notwithstanding the Supreme Court's holding, courts conflict over whether a lower court's decision *not to abstain* requires the same conclusion. BancBoston urges the Court to follow the Court of Appeals for the Fifth Circuit's decision, *In the Matter of the*

*Rupp & Bowman Co.,* 109 F.3d 237.[11] In that decision, the court held that, while a lower court's decision *to abstain* satisfies the unreviewability prong, a decision *not to abstain* does not because that decision is generally reviewable on appeal from final judgment. *See id.* at 240. The court reasoned that, when a federal court refuses to abstain from hearing a removed state action, the parties can appeal the final judgment issued in the removed action and can also, at that time, challenge the appropriateness of the decision not to abstain in the first place. *See id; see also Michelson v. Citicorp Nat'l Services, Inc.,* 138 F.3d 508, 517 (3rd Cir.1998) (holding that only a stay order that amounts to a federal court's refusal to adjudicate the merits is an appealable collateral order).

Associates, on the other hand, asks the Court to follow the Tenth Circuit's bankruptcy appellate panel's decision in *In Re Midgard Corp.,* where, without analysis, the bankruptcy appellate panel held that an order refusing to abstain was effectively unreviewable on appeal. 204 B.R. at 769; *see also Gentry,* 207 B.R. at 149–50 (holding that the denial of a motion for 28 U.S.C. § 1334(c)(2) mandatory abstention is immediately appealable to the district court) (citing cases).

Some courts cite *Quackenbush* for the proposition that all abstention and remand orders are appealable collateral orders. However, not all abstention and remand orders fall within this general rule. Analysis of whether an order meets the unreviewability prong entails an inquiry into the effect of a lower court's order under the circumstances of the particular case. *See Michelson,* 138 F.3d at 514 (stating that the finality analysis articulated in *Moses H. Cone Memorial Hosp.* requires an inquiry into the effect of the district court's stay to ascertain whether

the stay is effectively unreviewable on appeal if not appealed immediately). The purpose of the inquiry into the effect of the lower court's refusal to abstain or remand is to determine if the order is effectively unreviewable. The inquiry into the effect of the Bankruptcy Order in this case leads to the conclusion that, unlike the orders at issue in *Quackenbush* and *Moses H. Cone Memorial Hosp.,* the Bankruptcy Order is reviewable on appeal from the bankruptcy court's final judgment and, therefore, does not meet the unreviewability requirement of the collateral order doctrine.

In *Quackenbush* and its predecessor opinion, *Moses H. Cone Memorial Hosp.,* while preserving the general rule that stays are not generally appealable, the Supreme Court considered the appealability of staying federal court proceedings rather than a refusal to abstain. In *Moses H. Cone Memorial Hosp.,* after it acknowledged the general rule that stays are not final orders for purposes of appeal, the Supreme Court held that a lower court's decision to stay federal proceedings based on *Colorado River* abstention was appealable under the collateral order doctrine. *Moses H. Cone Memorial Hosp.,* 460 U.S. at 11, 103 S.Ct. at 934–35. The Court reasoned that the order would be "entirely unreviewable if not appealed now [because] once the state court decided the issue ..., the federal court would be bound to honor that determination as *res judicata.*" *Id.,* 460 U.S. at 11–13, 103 S.Ct. at 935. Likewise, in *Quackenbush* the Supreme Court held that the district court's order remanding on the grounds of *Burford* abstention "will not be subsumed in any other appealable order entered by the District Court," and the federal court will be bound *res judicata* by the state court's decision. *Quackenbush,* 517 U.S. at 714, 116 S.Ct. at 1719–20. Both the *Colorado River*

11. BancBoston also cites *Gentry v. Gentry (In re Gentry),* 127 F.3d 1102, 1997 WL 664747 (6th Cir.1997) in support of its position that this Court does not have jurisdiction to hear this appeal. However, *Gentry* does not support BancBoston's position. First, *In re Gentry* is an unpublished disposition and is not appropriate for citation under Sixth Circuit Rule 24(c) and the First Circuit's ruling in *Bachelder v. Communications Satellite Corp.,* 837 F.2d 519, 523 n. 5 (1st Cir.1988). Moreover, the Sixth Circuit's opinion resolves the appellate jurisdiction of the court of appeals under section 1334(d) over a mandatory abstention order and not the appellate jurisdiction of the district court which, as discussed above, is not limited by this section. *In re Gentry,* 127 F.3d at 1102. In fact, the district court in that case held that denial of a motion for mandatory abstention pursuant to section 1334(c)(2) is an immediately appealable order to the district court. *In re Gentry,* 207 B.R. at 149–50.

stay order and the *Burford* remand order in these cases were not appealable at the time of the district court's final judgment because, by definition, such orders are the practical equivalent of an order to dismiss. They both involve abstaining because of a parallel proceeding that would resolve the dispute and bind the federal court *res judicata*. The practical effect of the district court's stay and remand orders therefore made the orders themselves unappealable in federal court. Thus, they satisfied the unreviewability prong of the collateral order doctrine and were appropriately appealed immediately.

If the Bankruptcy Order in this case is not appealed at this time, it does not face the same fate of unreviewability. The Bankruptcy Order is not final in the sense that it has the practical effect of a dismissal. Because the bankruptcy court refused to abstain or remand, the Removed Foreclosure Action will be adjudicated in federal court. Moreover, the bankruptcy court's decision not to abstain and, thus, the determination that the Removed Foreclosure Action is a core proceeding in the Debtor's bankruptcy action can be appealed from the bankruptcy court's final judgment.

The most recent post-*Quackenbush* decision discussing the collateral order doctrine supports this reasoning. In *Michelson*, the Court of Appeals for the Third Circuit examined whether a decision to stay federal civil proceedings pending the resolution of a state criminal proceeding was an appealable collateral order. *Michelson*, 138 F.3d at 513. That court rejected the contention that all stay orders are appealable collateral orders and compared, as this Court has done, the practical effect of the stay at issue to the stay orders in *Quackenbush* and *Moses H. Cone Memorial Hosp. See id.* at 514–16 (noting the importance of recognizing the limited extent

to which stays are appealable); *see also Wolfson*, 51 F.3d at 144; *Marcus v. Township of Abington*, 38 F.3d 1367, 1369–70 (10th Cir.1994). The court found the stay was distinguishable because the state court judgment would not have a *res judicata* effect on the federal court and, further, the stay was for a finite period of time and merely delayed the federal litigation rather than ended it. *See Michelson*, 138 F.3d at 515, 517. The court concluded that when the stay does not effectively end the litigation in the federal court, it is not an appealable collateral order. *See id.* at 517. In so concluding, the court noted that, "once the court of appeals takes jurisdiction, it will have the opportunity to examine in detail all of the factors relevant to the decision ... [and] will then be in a position to decide whether the court abused its discretion in entering the stay." *Id.* at 516.

Like the stay at issue in the *Michelson* decision, the Bankruptcy Order refusing to abstain does not end the litigation regarding the Removed Foreclosure Action in that court. Instead, the Bankruptcy Order involves the selection of the federal forum as the one in which final decisions will ultimately be reached. Because the Bankruptcy Order does not end the litigation in federal court, Associates will have the opportunity to appeal the judgment entered by the bankruptcy court. At that time, the reviewing court will examine in detail all of the factors relevant to the decision and will then be in a position to decide whether the bankruptcy court was required to abstain or abused its discretion in refusing to abstain or to remand in the alternative. Indeed, BancBoston admits that the abstention issue is appealable after final judgment when it complains of the added costs of waiting. Notice of Appeal at 8.[12]

---

12. This reasoning is also consistent with cases dealing with court orders changing venue. In these decisions, courts reason that change of venue orders are not immediately appealable because they merely involve the selection or designation of the forum in which final decision will be ultimately reached and do not end the litigation in a federal forum. *See Dalton v. United States (In re Dalton)*, 733 F.2d 710, 714 (10th Cir.1984); *In re Sorrells*, 218 B.R. at 582. "Preliminary orders regarding forum are not appeal-able under the collateral order exception even though postponing review forces the would-be-appellant to litigate in the forum he seeks to avoid, and creates the risk that the entire proceeding will be rendered nugatory." *In re Dalton*, 733 F.2d at 715 (citing *U.S. Tour Operators Assoc. v. Trans World Airlines*, 556 F.2d 126, 129 (2d Cir.1977). Like orders changing venue, under the circumstances of this case, the Bankruptcy Order refusing to abstain was a preliminary order regarding forum that forces Associates to

It should be noted that the decision by this Court does not create a hard and fast rule that orders refusing to abstain are never appealable collateral orders. There may be situations where, under the particular circumstances of a case, an order refusing to abstain or to remand a removed state proceeding is effectively unreviewable on appeal or will cause other equally irreparable injury to the appealing party.[13] This is plainly not such a case. In its Notice of Appeal, Associates asserts only that if appeal of the core determination is not adjudicated at this time, the bankruptcy court, while possibly lacking jurisdiction, can be expected to continue to enter orders and or a judgment. Notice of Appeal at 8. Associates further argues that deferral of an appeal would cause delay and increased costs to the parties. *Id.* However, delay and costs caused to the parties because of the unavailability of appeal are not grounds alone for a court to hear the appeal. Hence, Associates does not show why the propriety of the bankruptcy court's decision in this case cannot be effectively raised on appeal from the final judgment. Absent such a showing, this Court cannot conclude that the decision is unreviewable on appeal from the final judgment of the bankruptcy court in the Debtor's Chapter 11 proceeding. The Bankruptcy Order refusing to abstain or remand does not meet the "unreviewable on appeal" element of the collateral order doctrine. Accordingly, this Court does not have jurisdiction to hear the appeal under the collateral order doctrine.

## C. Leave to Appeal Under 28 U.S.C. § 158(a)(3).

Associates also argues that this Court should grant it leave to appeal the Bankruptcy Order pursuant to section 158(a)(3). Under this section, a district court may exercise jurisdiction over an interlocutory order of a bankruptcy court if leave to hear the appeal is granted. 28 U.S.C. § 158(a)(3); Fed.R.Bankr.P. 8001(b) and 8003. Section 158 provides no express criteria to guide a court's discretion; however, most courts borrow the factors considered under section 1292(b) which governs appeals from district courts to courts of appeals. *See Foreign Car Center v. Salem Suede, Inc. (In re Salem Suede, Inc.)*, 221 B.R. 586, 596 (D.Mass.1998); *In re Bank of New England Corp.*, 218 B.R. at 652; *Monahan v. Massachusetts Dep't of Revenue*, 215 B.R. 287, 289 (D.Mass.1997); *In re Kalian*, 191 B.R. at 278. Under this standard, appeal is appropriate for orders that concern a controlling question of law for which there is a substantial ground for a difference of opinion, the immediate resolution of which may materially advance the ultimate resolution of the litigation. 28 U.S.C. § 1292; *see In re Sorrells*, 218 B.R. at 584; *In re Bank of New England, Corp.*, 218 B.R. at 652; *Monahan*, 215 B.R. at 289; *In re Kalian*, 191 B.R. at 278.

Courts have stated that interlocutory certification under section 1292(b), and thus leave to appeal under section 158(a)(3), should be used "sparingly and only in exceptional circumstances." *In re Kalian*, 191 B.R. at 278. However, courts have also reasoned that discretion under section 158(a)(3) is greater than that afforded under section 1292(b), *Lopez v. Casal (In re Casal)*, 998 F.2d 28, 31 (1st Cir.1993); *In re Salem Suede, Inc.*, 221 B.R. at 596; *In re Kalian*, 191 B.R. at 278 (noting that a somewhat loosened standard of finality obtains in bankruptcy appeals), and that the bankruptcy context requires a more flexible view of finality. *See Williams v. United States (In re Williams)*, 215 B.R. 289, 299 (D.R.I.1997) (*citing In re American Colonial Broadcasting Corp.*, 758 F.2d 794, 801 (1st Cir.1985); *McGowan v.*

litigate the Removed Foreclosure Action in bankruptcy court. It did not effectively end the litigation in the federal forum altogether nor did it render later appellate review of that decision impossible.

13. For example, despite the general rule that court orders changing venue are not appealable collateral orders, an exception was made in *United States v. Berkowitz*, 328 F.2d 358 (3d Cir.

1964). In *Berkowitz,* the court order denying transfer of venue effectively terminated the lawsuit because the defendant could not properly be served in the district court and the statute of limitation barred initiation of the action in another location. Under such circumstances, the venue decision was an appealable collateral order. *See In re Dalton,* 733 F.2d at 715 n. 4.

582

*Global Industries, Inc. (In re Nat'l Office Products, Inc.)*, 116 B.R. 19, 20 (D.R.I.1990) (citing a more liberal approach to finality in bankruptcy proceedings relative to civil litigation). Hence, courts have advocated for a more pragmatic and liberal approach in determining the appealability of bankruptcy court orders. This Court will thus analyze the appealability of the Bankruptcy Order in this case using the factors set out in section 1292(b) to guide its analysis while adopting the pragmatic and liberal approach required in determining the appealability of an interlocutory order in a bankruptcy proceeding. The analysis leads this Court to hold that the interlocutory abstention order in the present case involves a controlling question of law as to which there is substantial ground for difference of opinion, and the immediate resolution of the order may materially advance the ultimate termination of the litigation.

**1. Controlling Question of Law As to Which There is Substantial Ground for Difference of Opinion.**

 A controlling question of law as to which there is substantial ground for difference of opinion controls the outcome of the underlying case and raises a significant question of law. *See In re Bank of New England Corp.*, 218 B.R. at 652–53. Here, the Bankruptcy Order deciding not to abstain or remand requires finding whether the Removed Foreclosure Action is a core or noncore matter. Because a bankruptcy court does not have jurisdiction over noncore matters without the permission of the parties, this appeal determines whether the bankruptcy court has jurisdiction to enter rulings and a judgment in the Removed Foreclosure Action. Immediate resolution of this issue controls whether the Removed Foreclosure Action can be heard as part of the Debtor's bankruptcy proceeding. If the bankruptcy court has determined the jurisdiction question incorrectly, the parties are threatened with the continuing injury of orders being entered over a long period of time by a court that lacks jurisdiction. This threat makes the question of whether the bankruptcy court should have abstained a controlling issue of law. *See In re Williams*, 215 B.R. at 299 (holding that the combination of threatened,

continuing injury over a prolonged period of time posed by a monetary sanction against counsel justified the exercise of the court's discretion to hear the appeal).

Courts have granted leave to appeal questions regarding a court's jurisdiction and held that an order refusing to abstain in this context raises a controlling issue of law as to which there is substantial ground for difference of opinion. *See In re Sorrells*, 218 B.R. at 584 (granting leave to appeal because the bankruptcy court's decision determined whether court had jurisdiction to enter the change of venue order appealed); *In re Midgard Corp.*, 204 B.R. at 769–70 (granting leave to appeal a bankruptcy court's remand order pursuant to section 158(a)(3)). Furthermore, treatises regard orders relating to remand and orders that go to the power of a court immediately appealable. *See* 9 James W. Moore, *Moore's Federal Practice* ¶ 110.22[2] at 271–72 (2d ed.1996) (an order refusing to remand an action to the state court presents a controlling question of law and it may be certified for interlocutory appeal). *See* Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, 15 *Moore's Federal Practice* at § 3855 (2d ed.1986) ("The propriety of some form of interlocutory review seems quite clear if the issue goes to the power of the district court to make the order it did and only a question of law is presented."). Finally, the decision by the bankruptcy court to abstain in this case involves a question of law which may be reviewed *de novo, see In re Midgard Corp.*, 204 B.R. at 770, and resolution of the merits of this appeal neither slows nor affects the progress of the Debtor's proceedings. *See In re Williams*, 215 B.R. at 299.

BancBoston relies on *Sandler v. Eastern Airlines*, 649 F.2d 19 (1st Cir.1981), to support its argument that the Bankruptcy Order does not raise a controlling issue of law because the bankruptcy court could refuse to abstain on an alternate theory. Motion to Dismiss at 7. In *Sandler*, the court of appeals decided that the district court's denial of a motion to dismiss in a title VII case was not a controlling question of law for purposes of interlocutory appeal. *Sandler*, 649 F.2d at 20. The issue raised by the defendant on

appeal was whether an employment practice precluding married individuals and/or parents from being considered for employment was illegal under title VII. *Id.* The court reasoned that, because the plaintiff may have been able to prove that the marriage policy of the defendant was a pretext for its refusal to hire males, the question of its legality was not controlling. *Id.* at 20. BancBoston argues that if this Court reverses the bankruptcy court's decision not to abstain, and thus, its determination that the Removed Foreclosure Action is a core proceeding, the bankruptcy court could decide on remand that, even though it is noncore, one of the other requirements for mandatory abstention is not met or that section 1334(c)(2) does not apply to remanded motions at all. Motion to Dismiss at 7. Using this reasoning, BancBoston argues that the Bankruptcy Order does not raise an issue of law that is controlling because the determination on appeal will not control in the case.

The Court finds BancBoston's argument unpersuasive. The core/noncore determination is controlling in this case because it determines the bankruptcy court's jurisdiction over the action regardless of whether it must abstain pursuant to section 1334(c)(2). If the Removed Foreclosure Action is a noncore proceeding, the bankruptcy court must have permission from Associates to enter orders and final judgment in the proceeding. *See* 28 U.S.C. § 157(c)(2). Without Associates's permission, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court and any final order or judgment shall be entered by the district court. *See* 28 U.S.C. § 157(c)(1). Therefore, even if the bankruptcy court determines that it need not abstain because of a reason other than that the Removed Foreclosure Action is a core proceeding, the Bankruptcy Order still determines the core/noncore issue and thus whether the bankruptcy court has jurisdiction to hear the Removed Foreclosure Action. Accordingly, the Bankruptcy Order determines an issue of law that is controlling in this case.

### 2. Materially Advance Ultimate Termination of the Litigation.

Finally, to warrant discretionary review, the appeal must also materially advance the ultimate termination of the litigation. Final resolution of whether the Removed Foreclosure Action should be heard as part of the Debtor's bankruptcy proceeding and whether the bankruptcy court has jurisdiction to enter orders and a judgment in the Removed Foreclosure Action would materially advance the final resolution of the Debtor's bankruptcy proceeding. Were this Court to determine that the bankruptcy court had no jurisdiction over the Removed Foreclosure Action, the Debtor's bankruptcy proceeding would go forward unburdened by the issues raised in the Removed Foreclosure Action. Hence, resolution of whether the Court should have abstained from hearing the Removed Foreclosure Action and whether it has jurisdiction over the matter will materially advance the ultimate termination of the litigation.

Accordingly, this appeal involves a controlling question of law as to which there are substantial grounds for difference of opinion, and the immediate resolution of the issues raised by the Bankruptcy Order may materially advance the ultimate termination of the litigation. This Court, in the exercise of its discretion, will grant leave to hear the appeal.

### III. DISCUSSION

### A. The Bankruptcy Court's Decision Not to Abstain.

■ A critical predicate to removal of a state action to bankruptcy court is that the bankruptcy court have jurisdiction to hear the matter. *See* 28 U.S.C. § 1452(a) ("A party may remove any claim or cause of action in a civil action . . . to the [bankruptcy court] if such [court] has jurisdiction of such claim or cause of action under section 1334 of this title."). Furthermore, questions of whether a bankruptcy court must abstain from hearing and whether it has jurisdiction over a removed state action are intertwined.

Section 157, governing a bankruptcy court's jurisdiction, provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings

arising under title 11, or arising in a case under title 11...." 28 U.S.C. § 157(b)(1). That section further provides the following:

> The district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(c)(2). "Proceedings arising under title 11" and "arising in a case under title 11" are termed core proceedings, and matters that are merely "related to" a title 11 case are characterized as "noncore proceedings." *See Balcor/Morristown Ltd. Partnership v. Vector Whippany Assoc.*, 181 B.R. 781, 789 (D.N.J.1995).

Once jurisdiction is found, a bankruptcy court must determine the extent to which a bankruptcy court can adjudicate the matter. Without the consent of the parties, the bankruptcy court is not empowered to enter final judgments or orders in noncore proceedings. Instead, in noncore proceedings, the bankruptcy judge shall submit

> proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).

Whether a proceeding is core or noncore also informs a court when it must abstain. The statutory provision governing when a bankruptcy court must abstain provides,

> [u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Accordingly, a bankruptcy court must abstain from hearing a noncore proceeding if the other requirements of mandatory abstention are met and it does not have full jurisdiction to issue orders or a judgment in the noncore proceeding without the consent of the parties.

This Court must first determine whether the Removed Foreclosure Action is a core proceeding. Associates argues that the Removed Foreclosure Action is a noncore proceeding because none of the claims or causes of action asserted in it is predicated on a right created or determined by title 11 or is unique to or found only in bankruptcy proceedings, and the interest which BancBoston seeks to foreclose is not a property interest of the Debtor or its estate. Motion to Abstain at 6. BancBoston counters that under the circumstances of this case, the Removed Foreclosure Action involves the resolution of the Debtor's interest in a primary asset of the Debtor's estate. Namely, the Debtor can assume the lease in bankruptcy court and retain its interest in the hospital in the event of foreclosure pursuant to the Non–Disturbance Agreement. Objection of BancBoston to Motion to Abstain at 2. In the absence of a cure and assumption prior to completion of the foreclosure, foreclosure would extinguish the Debtor's sublease including the provision for the mandatory purchase of the real estate. *Id.*[14]

---

**14.** On September 21, 1998, BancBoston filed a Supplemental Memorandum in support of its Motion and Response ("Supplemental Memo") (Docket No. 6). Again, the Debtor adopted the arguments set forth by BancBoston. Supplemental Memo (Docket No. 7). According to the Supplemental Memo, on or about August 17, 1998, after it had filed its Notice of Appeal, Associates filed a proof of claim in bankruptcy court claiming unpaid rent, unpaid real estate taxes, encumbrances created on the property, damages to property, attorneys' fees and related expenses, and damages, if the lease is rejected, totaling approximately $1,265,000. Supplemental Memo at Appendix A. In addition, Associates reserved its right to establish any cure amounts and actual pecuniary loss owed to it by the Debtor pursuant to 11 U.S.C. § 365(b)(1). *Id.* BancBoston argues that by virtue of filing a proof of claim in the Debtor's bankruptcy proceeding, Associates has submitted the Removed Foreclosure Action to the bankruptcy court's core jurisdiction. This Court requested that As-

Although section 157(b) does not provide a precise definition of what is a core matter, "a proceeding is core under section 157 if it invokes a substantive right provided by title 11." 28 U.S.C. § 157(b)(2). Mortgage foreclosures are matters governed almost entirely by state law. Consequently, it appears at first blush that the Removed Foreclosure Action is not a core proceeding. It is clear here, however, that this is a core proceeding under section 157(b).

The Removed Foreclosure Action invokes a substantive right provided by title 11. The Debtor's mandatory option under the lease to purchase the full fee interest in the hospital in 1999 is a primary asset of its estate. *See* 11 U.S.C. § 541(a)(1) (estate in bankruptcy includes all legal and equitable interests of the debtor in property as of the commencement of the case). In the foreclosure action, BancBoston has asked the Court to determine that its mortgage interest has priority over any other interest in the hospital. Taped Proceeding. In addition, according to the terms of the Non–Disturbance Agreement, BancBoston has agreed that the rights of the Debtor shall not be disturbed and any foreclosure sale shall be made subject to the lease as long as the Debtor is not in terminable default. *Id.* Although the Debtor is presently in default under the lease, under title 11, the Debtor can cure its defaults, assume the lease, and gain priority to the hospital property. *See* 11 U.S.C. § 365. Thus, in bankruptcy court the Debtor can maintain its interest in the hospital and its operations by invoking a substantive right under title 11 to assume the lease. In contrast, were the Removed Foreclosure Action to proceed in state court, the Debtor would not have this right guaranteed under title 11, and its ability to reorganize would be debilitated.

These circumstances lead the Court to conclude that the Removed Foreclosure Action is a core proceeding in the Debtor's bankruptcy proceeding pursuant to section 157(b)(2)(O). Under section 157(b)(2)(O), "proceedings affecting the liquidation of the

assets of the estate" are core proceedings. 28 U.S.C. § 157(b)(2)(O). Here, the Removed Foreclosure Action affects one of the primary assets of the Debtor's estate and, thus, is a core proceeding. *C.f. Citicorp Savings of Illinois v. Chapman (In re Chapman)*, 132 B.R. 153, 157 (Bankr.N.D.Ill.1991) (reasoning that it could be argued that removed foreclosure proceeding against property of the estate was a core matter under 28 U.S.C. § 157(b)(2)(O) because the property was a major asset of the estate and foreclosure would have a significant impact on the reorganization).

To conclude, because the adjudication of the Removed Foreclosure Action under these circumstances in bankruptcy court invokes the Debtor's right to assume the lease and exercise its mandatory offer to purchase the hospital, thus retaining a principal asset of the estate, the Removed Foreclosure Action is a core proceeding. Accordingly, the bankruptcy court has jurisdiction over the Removed Foreclosure Action, and the bankruptcy court was not required to abstain pursuant to section 1334(c)(2), which requires abstention only for noncore matters. *See* 28 U.S.C. § 1334(c)(2). This Court also finds that abstention was not appropriate under section 1334(c)(1) and that no equitable basis for remand pursuant to section 1452(b) exists.

Associates also raises several procedural issues on appeal. It argues that a remand motion concerning a noncore proceeding is itself a noncore matter and, thus, the bankruptcy court was limited to submitting proposed findings of fact and conclusions of law to this Court pursuant to section 157(c)(1), rather than issuing a final order. Motion to Abstain at 5. However, as discussed *supra*, the Removed Foreclosure Action is a core issue and, therefore, the bankruptcy court was not required to submit proposed findings of fact and conclusion of law to this Court rather than issuing a final order.

sociates respond to BancBoston's Supplemental Memo. In their response, Associates argues that filing a proof of claim does not subject the Removed Foreclosure Action to the bankruptcy court's core jurisdiction. Supplemental Re-

sponse (Docket 9). This Court need not decide this issue because it determines *supra* that the Removed Foreclosure Action is a core proceeding and that the bankruptcy court has jurisdiction.

Associates also argues that the Bankruptcy Order should be overturned because only a portion, if any, of the Removed Foreclosure Action was removed to the bankruptcy court, pursuant to section 1452(a). Notice of Appeal at 4. Apparently, Associates is arguing that no claims involving the Debtor could have been properly removed to this Court pursuant to section 1452 because the Debtor is only a party-in-interest in the Removed Foreclosure Action, and no claims have been brought against it. The Court finds that this contention lacks merit because, as discussed *supra*, the Removed Foreclosure Action is a core proceeding and involves the Debtor.

Finally, Associates argues that the removal was fatally defective pursuant to Fed. R.Bankr.P. 9027(a)(1) because the Debtor did not provide copies of all process and pleadings at the time it filed the Notice of Removal. Notice of Appeal at 4; Motion to Abstain at 14–15. Associates argues that this is a fatal defect. Since the bankruptcy court did not remand the Removed Foreclosure Action because BancBoston and the Debtor failed to comply with Rule 9027(a)(1), this Court will also not remand on that basis.

## IV. CONCLUSION

Accordingly, the Court **ORDERS** that Associates's Notice of Appeal and Motion for Leave to Appeal the Bankruptcy Order refusing to abstain or remand from hearing the Removed Foreclosure Action be, and it is hereby, **GRANTED.** Based on the foregoing, the bankruptcy court is not required to abstain under 28 U.S.C. § 1334(c)(2) or 28 U.S.C. § 1334(c)(1) nor is remand appropriate pursuant to 28 U.S.C. § 1452(b)