**ELLIOT SANDLER, Plaintiff**
v.
**EASTERN AIRLINES, INC.,**
**Defendant**

No. 77-3897-MA

United States District Court
Commonwealth of Massachusetts

**June 21, 1982**

**Mark J. Gladstone,** counsel for plaintiff.
**Joseph Doktor,** counsel for plaintiff.
**Loyd M. Starrett,** counsel for defendant.

## MEMORANDUM AND ORDER

**Mazzone, D. J.** This is a civil rights action filed by the plaintiff, Elliot Sandler, against the defendant, Eastern Airlines, Inc. (Eastern), charging sex discrimination in employment. This matter was first before this Court on Eastern's motion to dismiss. The grounds for that motion were that the complaint failed to state a claim upon which relief could be granted because Eastern's policy against hiring married persons was applied to all applicants regardless of sex and, therefore, was not discriminatory.

That motion was denied, but certified for immediate appellate review pursuant to 28 U.S.C. sec. 1292(b). That appeal was dismissed by the Court of Appeals because the legality of the employment practice did not involve a controlling question of law, nor would an immediate appeal have materially advanced the ultimate termination of the litigation. **Sandler v. Eastern Airlines, Inc.**, 649 F.2d 19 (1st Cir. 1981).

Following that dismissal and apparently in response to certain questions raised in the **per curiam** opinion, the plaintiff amended his complaint to allege that the defendant's "no-marriage" rule (1) discriminated against men or (2) was applied more harshly against men, although facially neutral or (3) operated to exclude more men than women from jobs as flight attendants.

The defendant has now filed a renewed motion to dismiss and/or for summary judgment. That motion is supported by affidavits and extensive documentation. The plaintiff has not filed any opposition to the motion.

The facts are brief and essentially undisputed. In August, 1972, Sandler was denied a job as a flight attendant with Eastern Airlines because of Eastern's then existing rule against hiring married persons as flight attendants. In December, 1977, five years later, Sandler filed this complaint of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e, **et seq.**

In September, 1978, 10 months later, the complaint was served upon Eastern.

After review of the entire record, including the affidavits, exhibits and submissions of counsel, I conclude there is no genuine issues of material fact and that summary judgment is an appropriate resolution of this case.[1] Fed. R. Civ. P. 56.

### I.

The plaintiff's allegation that Eastern's no-marriage rule applied solely to men has been rebutted by affidavits and exhibits. Those exhibits include Eastern's recruitment brochure and newspaper advertising and clearly show that all applicants, regardless of sex, were subject to the no-marriage rule.

Initially, Sandler recognized that he was not employed because he was married.[2] Later, he adopted the position that the no-marriage rule applied solely to men. However, that position, as indicated above, has been rebutted by the defendant's factual submission and the plaintiff, despite ample time and opportunities, has offered nothing to controvert those facts.

### II.

The uncontroverted affidavits also show clearly that Eastern applied its no-marriage policy on an even-handed basis and that there were no married applicants employed by Eastern prior to the time when its policy was changed in 1973. There is no basis, therefore, for Sandler's assertion that Eastern's no-marriage policy was applied in practice more harshly against men. Again, the record has not been controverted by Sandler.

---

1. Given this conclusion, the question of this Court's jurisdiction to consider Sandler's claims is not discussed. However, it should be noted that the EEOC's determination addressed the impact of Eastern's policy only against women, not men, and, therefore, these allegations of discrimination against men exceed the scope of the EEOC's inquiry.
2. Sandler's application for employment was accompanied by a letter dated August 4, 1972 in which he stated that he felt the no-marriage policy was "very unfair to anyone married."

## III.

The most substantial theory asserted by Sandler is that the policy, although neutrally drawn and applied, had a disparate impact upon men. First, the plaintiff has failed to allege any factual basis for this theory. His conclusory allegations do not raise any genuine issue of material fact as to the significance of any alleged disparate impact. **Sandler v. Eastern Airlines, Inc., supra,** at 20, n.1.

Secondly, even if the disparate impact theory were adequately alleged, the no-marriage rule did not operate disproportionately to exclude men from employment as flight attendants. **Griggs v. Duke Power Co.,** 401 U.S. 424 (1971); **Dothard v. Rawlinson,** 433 U.S. 321 (1977). This rule does not have a predictable and adverse impact on members of a particular protected group. Congress did not add marital status as a class that required protection under Title VII.

Finally, Eastern has submitted clear, convincing and uncontroverted facts that its no-marriage rule did not, in practice, have any adverse impact upon men. In 1972, men constituted 22.5% of the 1,106 flight attendants hired in 1972. Yet, in the following two years, 1973 and 1974, when Eastern abandoned its no-marriage policy, the percentage of men hired as flight attendants **declined** sharply, rather than increased as would be necessary to support Sandler's allegations. In 1973, the percentage was 17.5%, and in 1974, the percentage was 11%.

Similar analysis of a hypothetical applicant pool based upon census data[3] show there was no substantial disparity needed to show unlawful disparate impact. **Dothard v. Rawlinson, supra,** at 330, n.12; **Griggs v. Duke Power Co., supra,** at 430, n.6. Indeed, men of Sandler's age had a slight advantage, not disadvantage over women at the time of his application. If there were potential disparate impact, the plaintiff has made no attempt to show it and, in light of the statistical data submitted by Eastern, it is unlikely that he would be able to do so.

## Conclusion

In accordance with the above, the defendant is entitled to summary judgment and the plaintiff's complaint must be dismissed with prejudice.

SO ORDERED.

**A. David Mazzone**
**United States District Judge**

## JUDGMENT

**Mazzone, D.J.** In accordance with the Court's memorandum and order entered on June 21, 1982 allowing the defendant's motion for summary judgment in the above entitled action, it is hereby ORDERED judgment for the defendant. Complaint dismissed with prejudice.

By the Court,

**Helen Costello**
**Deputy Clerk**

---

3. **See** U.S. Bureau of the Census, **Characteristics of the Population,** 1970 Census, Tables 49 and 54. Exhibit C to Defendant's Memorandum.