In re JACKSON BROOK INSTITUTE, INC., Debtor.

In re Viburnum, Inc., Debtor.

JBI, the JBI Estate, the JBI Creditors' Trust, and the JBI Trustee, By and Through Speltz Consulting, LLC, as Trustee of the JBI Creditors' Trust, for Itself and for Such Entities, Plaintiffs/Appellees,

v.

The Directors and Officers of JBI, Viburnum, and/or CCSME, et al., Defendants/Appellants.

Bankruptcy Nos. 98–20439–JAG, 99–20106–JAG.
No. 02–MC–15–P–C.
Adversary No. 00–02040.

United States District Court, D. Maine.

June 19, 2002.

James G. Goggin, Andrew R. Sarapas, Verrill & Dana, Portland, ME, Jonathan R. Doolittle, Verrill & Dana, Portland, ME, for plaintiffs.

Michael A. Nelson, Jensen, Baird, Gardner & Henry, Portland, ME, Philip J. Moss, Moon, Moss, McGill, Hayes & Shapiro, P.A., Portland, ME, F. Warren Jacoby, Cozen O'Connor, Philadelphia, PA, for defendants.

## MEMORANDUM OF DECISION AND ORDER ON MOTION FOR LEAVE TO APPEAL FROM BANKRUPTCY COURT'S INTERLOCUTORY ORDER DENYING APPELLANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

GENE CARTER, District Judge.

### I. Facts

On March 24, 2000, Health Care Accounting and Consulting Services, LLC *et al.* commenced in the Bankruptcy Court for the District of Maine an adversary proceeding against several pre-petition officers and directors of Jackson Brook Institute ("JBI"). Subsequently, Health Care Accounting was "succeeded by Speltz ... Consulting, LLC, by order dated April 24th of [2002]," and Speltz Consulting, LLC (Plaintiffs/Appellees or Appellees), as trustee of and for the JBI Creditors' Trust, is now pursuing this action against the officers and directors (Defendants/Appellants or Appellants). Transcript of Bankruptcy Court Order dated January 11, 2002 ("Tr.") at 6. The First Amended Complaint asserts causes of action including, *inter alia*, breach of fiduciary duty, breach of confidential relationships, inequitable conduct, allowing JBI to make fraudulent transfers, poor business decisions, and aiding and abetting.[1] These claims are predicated on events that occurred

---

1. The parties refer to the claims in the adversarial proceeding as "D & O Claims," but fail to define that term. The Court assumes that "D & O Claims" refers to claims against the Directors and Officers of the Debtors, JBI and Viburnum.

prior to the commencement of the chapter 11 filings (or "pre-petition") by JBI and Viburnum. On August 2, 2001, Defendants/Appellants filed a Rule 12(c) Motion for Judgment raising the defenses of *res judicata*, judicial estoppel, and equitable estoppel. The bankruptcy court held a hearing on September 5, 2001, regarding Defendants/Appellants' Motion for Judgment in the underlying adversary proceeding. *See* Title 28 U.S.C. § 157(b)(1) and standing order of reference. The bankruptcy court issued a final decision denying Defendants/Appellants' motion on January 11, 2002.

On January 22, 2002, Steven E. Katz, M.D., Kathy Mead, and Alexander Hoinsky, former officers and/or directors of JBI, filed this Motion for Leave to Appeal pursuant to 28 U.S.C. § 158(a)(3) and Fed. R.Bankr.P. 8001(b) and 8003, along with an election, pursuant to 28 U.S.C. § 158(c)(1)(A) and Fed.R.Bankr.P. 8001(e) (West 1997 & Supp.2002), to have the appeal heard by the United States District Court for the District of Maine. In this appeal, Appellants contend that the bankruptcy court erred in holding that certain claims were not barred by: (1) judicial estoppel, (2) equitable estoppel, or (3) *res judicata*. *See* Motion for Leave to Appeal (Docket No. 2) (hereinafter "Motion") at 8. Appellants "seek a reversal of the Order

and the entry of an order remanding the case to Bankruptcy Court with instructions to enter an order granting the Motion for Judgment." *Id.* Appellants also request oral argument on their motion. *See* Docket No. 3. Appellees have filed an Objection to Motion for Leave to Appeal and Motion to Dismiss the Appeal. *See* Docket No. 5 (hereinafter "Objection").

### The Underlying Bankruptcies

On March 27, 1998, JBI filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maine (Chapter 11 Case No. 98–20439). On or about May 14, 1998, JBI filed the Schedules and Statement of Financial Affairs ("JBI Schedules") required by Fed. R.Bankr.P. 1007(b). On or about December 28, 1998, the bankruptcy court approved a reorganization plan (the "plan") for JBI, which included the dismissal with prejudice of certain claims.[2] On or about January 22, 1999, Viburnum filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maine (Chapter 11 Case No. 99–20106). On or about February 22, 1999, Viburnum filed its' Schedules and Statement of Financial Affairs, which disclosed the existence of breach of contract claims against

**2.** Plaintiffs assert that the D & O claims were not listed on the JBI Schedules. However, one of the claims that was dismissed according to the terms of the Plan was filed by Casco Northern Bank, in 1993, against JBI and others (the "Casco Action"), alleging that JBI improperly "upstreamed" funds from JBI's operation to JBI Associates Limited Partnership ("JBIA"). The Court is unsure of the relevance of this action because Appellants do not assert that it was filed against directors and officers of JBI or JBIA, and they do not explain why it should here have preclusive effect. Another action was filed in November 1997, by JBIA against JBI and Frederick

Thacher, in his capacity as chairman of the JBI board of directors and as majority shareholder of JBI's parent, Community Care Systems, Inc., seeking, *inter alia*, the appointment of a receiver over JBI, its business, and its assets (the "Receivership Action"). In its Verified Complaint, JBIA alleged that JBI was insolvent within the meaning of 13–A M.R.S.A. § 1115(2) and within the meaning of the Maine Uniform Fraudulent Transfer Act, 14 M.R.S.A. §§ 3571–3582 ("UFTA"), and that JBI had made improper inter-company transfers, which were avoidable under the UFTA. *See also* further discussion *infra*, at Section II. A. 3. a.

health care provider groups.[3] Viburnum and JBI then filed a Joint Plan of Reorganization (the "Joint Plan"), which the bankruptcy court confirmed ("Confirmation Order") on March 17, 1999. *See* Docket No. 2 at 4.

## II. Discussion

In denying Defendants/Appellants' Motion for Judgment, United States Bankruptcy Judge Haines applied the standard under Rule 12(c), similar to Rule 12(b)(6) for a motion to dismiss, accepting as true the factual allegations of the Complaint and drawing all inferences in favor of Plaintiffs/Appellees. Fed.R.Civ.P. 12(c); Tr. at 4–5. Appellants argue that this Court should grant interlocutory review of the denial of their motion for judgment on the pleadings. Appellees claim that the bankruptcy court correctly denied the motion and that Appellants are not entitled to discretionary interlocutory appeal.

### A. Leave to Appeal

Pursuant to 28 U.S.C. 158(a), this Court has "jurisdiction to hear appeals (1) from final judgments, orders, and decrees [of the bankruptcy court] . . . and, (3) . . . with leave of the court, from interlocutory orders and decrees, of bankruptcy judges. . . ." 28 U.S.C. § 158(a)(1) & (3). Appellants concede that the bankruptcy court's "Order, which denied a motion for judgment on the pleadings, is not a final judgment on the merits, and, therefore, leave to appeal is required." Motion at 8. The Bankruptcy Appellate Panel of the First Circuit has stated: " 'An order denying a motion to dismiss . . . is a common example of what is normally [an] . . . interlocutory order.' " *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 648 (1st Cir. BAP 1998) (quoting *In re Empresas No-*

*roeste, Inc.*, 806 F.2d 315, 317 (1st Cir. 1986) (collecting cases)). Because the bankruptcy court's order was not final, the Court concludes that Appellants are not entitled to an appeal under 28 U.S.C. 158(a)(1), and the appropriate inquiry now before the Court is whether or not to grant Appellants leave to appeal under 28 U.S.C. 158(a)(3).

In deciding whether to exercise discretion to hear an appeal, "most courts utilize the same standards as govern the propriety of district courts' certification of interlocutory appeals to the circuit courts under [28 U.S.C.] § 1292(b)." *In re Bank of New England Corp.*, 218 B.R. at 652. That standard requires the Court to balance the following factors: "whether (1) the 'order involves a controlling question of law' (2) 'as to which there is substantial ground for difference of opinion,' and (3) whether 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.' " *Id.* (quoting 28 U.S.C. § 1292(b)); *see also, In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1010 n. 1 (1st Cir. 1988) (in this circuit, "interlocutory certification of this sort 'should be used sparingly and only in exceptional circumstances. . . .' "); *see also, In re Jackson Brook Institute, Inc. (Bancboston Real Estate Capital Corp. v. JBI Associates Limited Partnership)*, 227 B.R. 569, 581 (D.Me.1998) (noting that, although leave to appeal under section 158(a)(3), like section 1292(b), should be used "sparingly and only in exceptional circumstances," greater discretion is afforded under section 158(a)(3) than under section 1292(b)) (citing *Northeast Savings, F.A. v. Geremia (In re Kalian)*, 191 B.R. 275, 278 (D.R.I.

---

**3.** Viburnum's filings disclosed the existence of breach of contract claims against Integrated Physician Services and an unspecified claim against Monhegan Health Management but, Plaintiffs assert, they did not disclose the D & O claims.

1996)). The Court will consider each of Appellants' bases for appeal under the standard for this Court's exercise of discretion to hear an appeal.

### 1. Judicial Estoppel

#### a. Controlling Question of Law

■ Appellants argue that a controlling question of law regarding judicial estoppel necessitates interlocutory review of the bankruptcy court's order. The Court of Appeals for the First Circuit "has not been liberal in interpreting the requirement that a certified question under 1292(b) be 'controlling.'" *Ashmore v. Northeast Petroleum Div. of Cargill, Inc.,* 855 F.Supp. 438, 440 (D.Me.1994) (citing *McGillicuddy v. Clements,* 746 F.2d 76, 76 n. 1 (1st Cir.1984) (appeal not normally allowed from denial of motion to dismiss)). If the issue for review "cannot be fairly described as grappling with an important and unsettled question of controlling law," the resolution of an important legal question may not arise. *In re Bank of New England Corp.,* 218 B.R. at 650 (internal quotations omitted). The Court of Appeals for the Second Circuit has described a "controlling issue" as one embodied in an order which, if reversed, would terminate the action. *See Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 24–25 (2d Cir. 1990). The Court of Appeals for the First Circuit has noted that this question overlaps the "materially advance the ultimate termination of the litigation" factor. *In re Bank of New England Corp.,* 218 B.R. at 654, 654 n. 21. If the parties could be successful on alternative grounds or asserted theories, the question asserted may not be controlling. *See, e.g., Sandler v. Eastern Airlines, Inc.,* 649 F.2d 19, 20 (1st Cir.1981).

In claiming that a controlling issue of law merits interlocutory review, Appellants assert: "this Court's adjudication of the defenses raised in the Motion for Judgment would control the outcome of the underlying case." Motion at 10. Appellants claim that, because "[c]ourts routinely certify interlocutory appeals where dispositive issues, such as ... estoppel, are raised by a ... motion for judgment on the pleadings" and because the issue of judicial estoppel is plainly dispositive in this case, this Court should grant them leave to appeal. *Id.* (citing cases). Appellees respond that questions raised in the motion for judgment do not implicate any controlling issue of law, but concern "matters entrusted to the Bankruptcy Court's discretion." Objection at 8. Specifically, Appellees assert that the interpretation of the schedules and other bankruptcy pleadings are simply a matter of factual interpretation over which the bankruptcy court has discretion. *Id.* at 8–9. Appellees cite decisions by district courts in Georgia and New York, for the propositions that matters such as the interpretation of the significance of the failure to list claims on schedules are entrusted to the discretion of the bankruptcy court and that such matters do not warrant interlocutory appeal. *See In re Aquatic Development Group, Inc.,* 196 B.R. 666 (N.D.N.Y.1996); *In re Chandler,* 66 B.R. 334 (N.D.Ga.1986).

The Court finds that the application of the legal defense of judicial estoppel in this case is at least a mixed question of fact and law, which could control the outcome of the litigation. Because the application could, in theory, control the adjudication of the adversary proceeding, the Court will proceed to the next inquiry in the analysis: whether there is *substantial ground for difference of opinion* as to the applicability of this potentially *controlling issue of law.*

#### b. Substantial Ground for Difference of Opinion

Appellants' central argument in support of their appeal is that the bankruptcy

**6**

court misapplied the applicable law within the First Circuit governing judicial estoppel and, because there are differences within the circuits regarding judicial estoppel, they claim that immediate appellate review of this pivotal question has implications far beyond this case. Motion at 11–12. The Court of Appeals for the First Circuit has defined a substantial ground for difference of opinion as the rare case " 'where the proposed intermediate appeal presents one or more difficult and pivotal questions of law *not settled* by controlling authority.' " *In re Bank of New England Corp.*, 218 B.R. at 653 (quoting *McGillicuddy*, 746 F.2d at 76 n. 1). The court, in *In re Bank of New England Corp.*, stated that the fact that there is "room for ... garden variety legal argument" does not amount to substantial ground for difference of opinion. *Id.* at 653.

Appellants attempt to argue that there is a substantial ground for difference of opinion on what elements make up judicial estoppel. Specifically, Appellants claim that the bankruptcy court erred by adding the elements of detrimental reliance, self-dealing, and malicious intent to judicial estoppel, which they claim is contrary to First Circuit precedent Appellants further claim that Debtor's failure to disclose the D & O claims in the chapter 11 proceeding amounts to fraud on the court that can only be rectified by immediate dismissal of the claims. Appellees respond that the bankruptcy court correctly applied the law of judicial estoppel, as clearly established in the First Circuit, while leaving open the possibility that Appellants could generate through discovery evidence which could ultimately support estoppel.

The law of judicial estoppel within the First Circuit is well-settled:

> [T]he doctrine [of judicial estoppel] precludes a party from asserting a position in one legal proceeding which is con-

trary to a position it has already asserted in another.... Judicial estoppel should be employed when a litigant is playing fast and loose with the courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.

*Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987) (internal quotations omitted); *see also Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 12 (1st Cir.1999) (judicial estoppel "doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies"); *see also Hurd v. DiMento & Sullivan*, 440 F.2d 1322 (1st Cir.), *cert. denied*, 404 U.S. 862, 92 S.Ct. 164, 30 L.Ed.2d 105 (1971).

**i. Playing Fast and Loose**

Appellants contend that the so-called D & O Claims, which are the subject of the underlying adversary proceeding, were not disclosed by the Debtors in their Schedules and Statements of Financial Affairs, or the Joint Plan of Reorganization, nor were these claims described with any specificity in the documents transferring the property of the Debtor's estate to the JBI Creditors' Trust and the Viburnum Creditors' Trust or in any later pleadings. *See* Motion at 3–5. This failure, Appellants argue, amounts to playing fast and loose with the courts and obtaining unfair advantage. Appellants further assert that the bankruptcy court's order "engrafted a requirement of self-dealing or malicious intent" onto the law of judicial estoppel, contrary to First Circuit precedent, in effect holding that a debtor may "intentionally or negligently conceal[ ] the cause of action as an asset from its creditors and from the Court, so long as the concealment is done without malfeasance, malice, 'evil intent,' or a motive of self-dealing." Ap-

pellants' Request for Oral Argument (Docket No. 3) at 1–2. Appellees respond that the bankruptcy court has authority to interpret schedules and plans and that the law of judicial estoppel within this Circuit was correctly articulated by the bankruptcy court here. Appellees further contend that the court appropriately considered motive and intent because the standard does contain these elements, and that any particular failure to disclose may not necessarily amount to playing fast and loose with the courts. This Court agree with Appellees' contentions.

Contrary to Appellants' assertion, the bankruptcy court correctly quoted the applicable law, stating: "the First Circuit rule is that judicial estoppel should be employed when the litigants [are] playing fast and loose intentionally engaging in self-contradiction as a means of obtaining unfair advantage." Tr. at 14. The bankruptcy judge, who presided over the underlying bankruptcy cases at issue in this case, found no evidence that Plaintiffs/Appellees were playing fast and loose with the courts. Indeed, the judge found that Plaintiffs/Appellees in the underlying adversarial proceeding "ha[d] not misled anyone with an intention to deceive them or a motive to benefit itself by hiding assets and later prosecuting those claims that are at issue here for its own account." Tr. at 10–11. In addition, the bankruptcy court found that there was no "intent to manipulate the process or a motive to hide the causes of action [from the outset of the case]" despite the apparent failure to specifically disclose the D & O claims in the chapter 11 schedules and statements. Tr. at 11. The court found that there was "no evidence, nor could there be in this procedural posture, or even [any] allegation that the debtors intentionally concealed the cause of action for their own benefit." Tr. at 14–15. The bankruptcy court cited *New Hampshire v. Maine*, 532 U.S. 742, 121

S.Ct. 1808, 149 L.Ed.2d 968 (2001), for the proposition that "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." Tr. at 14; *New Hampshire*, 532 U.S. at 753, 121 S.Ct. at 1816 (internal quotation omitted). The court found that Plaintiffs did not "solicit or seek votes for confirmation from these defendants, and it can't be said that they hid the asset in order to lull them into complacency about the plan, only to resurrect these claims." Tr. at 15. This Court, therefore, concludes that the bankruptcy court did not "engraft" any additional requirements onto the law of judicial estoppel, as Appellants contend, when it concluded that the Appellees were neither using "intentional self-contradiction" nor "playing fast and loose with the courts." *See Patriot Cinemas*, 834 F.2d at 212.

### ii. Inconsistent Positions

Appellants also argue that Debtor's nondisclosure of the D & O claims constitutes a prior inconsistent position on which they were successful, necessitating judicial estoppel of the claims in the underlying proceeding. Appellees respond that Appellants have not met the doctrine requirement that "the party being estopped have succeeded previously with a position directly inconsistent with the one it currently espouses." *Lydon*, 175 F.3d at 13; Opp. at 7; Tr. at 12–14. The bankruptcy court stated:

> I'm not convinced that the kind of success that the plaintiffs achieved in having their plans confirmed with the involvement of the creditor body, which at the time did not include these defendants, is the kind of success that's required, given the fact that the allegedly inconsistent position is now being taken in a proceeding that involves people who were not directly involved before.

Tr. at 14. The court further concluded that there was no risk of inconsistent court determinations or contradictory positions before different tribunals to suit Plaintiffs' ends, as was evident in *Patriot Cinemas*, in part, because the proceedings have all been before the same tribunal. Tr. at 12. The court stated that, although this fact is not determinative, it goes to apparent strategy or motive to play fast and loose or to deceive the court. *Id.* The court further concluded that Plaintiffs obtained no unfair advantage by omitting the claims because Defendants were not parties when the Plaintiffs' plans were confirmed. Tr. at 13. The bankruptcy court stated: "It's also the case that many of these defendants, they were all basically insiders, and many of them were in a position to control what was on the schedules, and the schedules were really the principal public document manifesting the failure to disclose complained of." Tr. at 15. Finally, the bankruptcy court concluded that Plaintiffs did not enjoy any previous success that is directly inconsistent with a position they are currently espousing within the meaning of the judicial estoppel doctrine.

■ Appellants strain to find a contested issue of law, but they fail in their attempt because, as stated above, the bankruptcy court correctly articulated the standard within this circuit regarding judicial estoppel. Furthermore, a claim of misapplied law, coupled with a claim of a dispute among the circuits, is not the stuff of which interlocutory appeals are made since such a claim may be appealed on the

merits. *See In re Bank of New England Corp.*, 218 B.R. at 648, 653. The Court, therefore, concludes that the bankruptcy court's denial of Appellants' motion for judgment based on judicial estoppel raised no controlling issue of law upon which there is substantial ground for difference of opinion.

### c. Appeal Does Not Materially Advance Termination of the Litigation

Appellants make no argument on this factor other than the conclusory assertion that a reversal of the bankruptcy court's order would leave no claims remaining for adjudication at trial. Motion at 13. Appellees respond that the bankruptcy court's order is procedurally akin to the denial of a motion to dismiss that did not decide a substantial question of law. *See McGowan v. Global Industries, Inc. (In re National Office Products)*, 116 B.R. 19, 21 (D.R.I.1990); *see also Sandler*, 649 F.2d at 20 ("further development of the facts will be required before a question of law, susceptible of appellate determination, emerges"); *see also In re Bank of New England Corp.*, 218 B.R. at 652–53. Appellees further respond that granting leave to appeal would not advance the termination of the litigation because the bankruptcy judge acknowledged but declined to address alternative substantive arguments on matters within the bankruptcy court's discretion relating to interpretation of language in the chapter 11 plans.[4] Objection at 13. This Court concludes that, although the

---

4. It should be noted that Defendants/Appellants argued to the bankruptcy court that nothing in the prior bankruptcy disclosures made clear the existence of the D & O claims, and Plaintiffs/Appellees responded with additional substantive arguments, *i.e.*, that the Confirmation Order and Clarification Order sufficiently preserved the claims. Judge Haines ruled that he need not reach the substance of the arguments regarding whether the general retention language in the Confirmation Order and the clarification of the bankruptcy plans saved Plaintiffs/Appellees' claims because, on the record before the bankruptcy court, Plaintiffs/Appellees had sufficiently alleged causes of action implicating Defendants/Appellants, and Defendants/Appellants had failed to demonstrate the required elements of judicial estoppel. Tr. at 9–10.

application of judicial estoppel could advance the termination of the litigation, this Court is not in a position, in an appellate posture, to determine the applicability of the doctrine because there is an insufficient record. In other words, even if this Court agreed to take an appeal, the Court cannot review what the bankruptcy court has not yet decided, *i.e.*, the relevant factual findings regarding interpretation of the plans vis-á-vis disclosure or nondisclosure of the D & O claims. This Court agrees that, as Appellees maintain, granting leave to appeal would not materially advance the ultimate termination of the litigation but would result in piecemeal adjudication of the matter. Objection at 14.

▮ To reiterate, courts do not typically grant interlocutory review of the denial of a motion to dismiss. *See In re Bank of New England Corp.*, 218 B.R. at 654. The Court concludes that because the bankruptcy court refrained from addressing the parties' alternative arguments on the merits of applying judicial estoppel, *see* Tr. at 9–10, Appellants have failed to demonstrate that the result on an interlocutory appeal would materially advance termination of the litigation, thereby justifying this Court's exercise of discretion.

### 2. Equitable Estoppel

#### a. Controlling Question of Law

▮ Appellants also argue that the Court erred in failing to apply equitable estoppel and that this is a controlling issue warranting interlocutory appellate review. "Under Maine law, equitable estoppel 'bars the assertion of the truth by one whose misleading conduct has induced another to act to his detriment in reliance on what is untrue.'" *Hodgkins v. New England Telephone Co.*, 82 F.3d 1226, 1232 (1st Cir.1996) (citing *Anderson v. Commissioner of the Dep't of Human Servs.*, 489 A.2d 1094, 1099 (Me.1985)). Appellants make

no specific argument that a controlling issue of law is present regarding equitable estoppel other than an indirect reference to reliance. The bankruptcy court found that the Debtors had not "made misrepresentations through nondisclosure calculated, or even negligently, to lure the defendants into supporting the plan because they didn't need the defendants' support of the plan." Tr. at 23. The bankruptcy court declined to rule on the issue of Defendants/Appellants' reliance on Plaintiffs/Appellees' alleged material misrepresentations because that is disputed on the record. Tr. at 21–23 ("On the record before me, and with the standard that I must apply in these proceedings, I cannot rule to dismiss the case on equitable estoppel grounds without a more developed factual record."). Because the bankruptcy court found that reliance had not been established on the pleadings, it denied the motion for judgment on equitable estoppel grounds.

Appellants further contend that the bankruptcy court erroneously ruled that nondisclosure does not amount to fraud. This argument mischaracterizes, at best, the bankruptcy court's ruling, which stated, in relevant part: "Nondisclosure alone may or may not meet the requirement of a position later inconsistent with a position that discloses the assets." Tr. at 13. The Court distinguished the alleged "nondisclosure" to Defendants in this case from the potentially fatal "failure to list claims or a failure to take issue with claims as part of the confirmation process, and then a resurrection of those claims against someone who *fairly expected* that the claims were dead as a part of the plan confirmation and the terms of the confirmed claim. . . ." Tr. at 13 (emphasis added). The bankruptcy court found that, even if the D & O claims were not specifically asserted earlier in the chapter 11 proceedings, the parties were not the same to a sufficient degree because

the Confirmation Order dealt only with participants in the chapter 11 proceeding. Moreover, because the bankruptcy court refrained from ruling on the merits of the claims of alleged material misrepresentation and reliance, these arguments are preserved.

The Court concludes that further development of the facts will be required before the issue of whether any alleged nondisclosure requires application of estoppel in the circumstances of this case. Appellants have failed to show that the issue of equitable estoppel is "controlling."

**b. Substantial Ground for Difference of Opinion and Material Advancement of the Termination of the Litigation**

Appellants make no claim that there is a substantial ground for difference of opinion regarding equitable estoppel other than claiming that the bankruptcy court erred in declining to apply the doctrine to grant them judgment on the pleadings. These "garden variety legal argument[s]" are insufficient to justify interlocutory appeal to this Court under section 158(a)(3), in part, because they can later be raised on direct appeal. *In Re Bank of New England Corp.*, 218 B.R. at 653. Appellants also fail to make substantive arguments regarding how the reversal of the bankruptcy court's order on equitable estoppel grounds materially advances the termination of the litigation. Appellants merely repeat the conclusory assertion that application of estoppel would end the adversary proceeding, which taken together with the lack of showing that any controlling issue arises over which substantial difference of opinion exists, is altogether insufficient to convince this Court of the necessity of exercising discretionary review.

**3. *Res Judicata***

**a. Controlling Question**

Appellants argue that Appellees' claims are barred by *res judicata* and

that, because this issue is "dispositive," leave to appeal should be granted. *See* Motion at 10. The Court of Appeals for the First Circuit has held:

> Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action. [citation omitted] For a claim to be precluded, the following elements must be established: (1) a final judgment on the merits in an earlier action, (2) sufficient identity between the causes of action asserted in the earlier and later suits, and (3) sufficient identity between the parties in the two suits.

*Porn v. National Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir.1996) (citing *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *see also Apparel Art Intern., Inc. v. Amertex Enterprises Ltd.*, 48 F.3d 576, 583 (1st Cir.1995); *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 755 (1st Cir.1994)). Appellants appear to be claiming that the previous dismissal of the breach of contract action brought pre-petition by Casco Northern Bank should now operate to bar all claims against the directors and officers, although they have failed even to allege that the Casco Action was brought against directors and officers. Appellants further appear to be arguing that the Receivership Action brought by JBIA against Thacher, in his capacity as chair of the board of directors of JBI, bars any future claims by anyone against all JBI officers and directors. The bankruptcy court ruled that Defendants/Appellants were not participants in the chapter 11 case to a significant degree to establish that Plaintiffs/Appellees' claims are barred by *res judicata*. The court stated that it is

generally accepted that plan confirmation is essentially equivalent to a final judgment with regard to the claims of creditors insofar as res judicata is concerned ..., however, ... in order for a confirmed Chapter 11 plan to be given the preclusive effect of final judgment between a debtor and a creditor, the creditor must at least have been a participant in the Chapter 11 confirmation process.

Tr. at 18. The bankruptcy court found that Defendants/Appellants did not file proofs of claim in this case and were not direct participants, in their capacity as officers and directors, in the chapter 11 confirmation process. Tr. at 18–19. Appellants have made no specific argument that the issue of *res judicata* implicates a controlling issue of law other than to assert that courts may grant immediate appeal pursuant to 28 U.S.C. § 1292(b) on *res judicata* grounds. On the record before this Court, Appellants' argument is far too imprecise to enable a determination by this Court regarding whether the elements justifying the application of *res judicata* are met. The Court finds that Appellants have failed to establish that any "controlling issue of law" regarding *res judicata* arises necessitating interlocutory appeal.

**b. Substantial Ground for Difference of Opinion and Material Advancement of the Termination of the Litigation**

Appellants make no claim that there is a substantial ground for difference of opinion regarding *res judicata* other than claiming that the bankruptcy court erred in declining to apply the doctrine to grant their motion for judgment on the pleadings. As this Court stated, *infra* at II.A.2.b., these "garden variety legal argument[s]" are insufficient to justify interlocutory appeal to this Court under section 158(a)(3), in part because they can be raised later on direct appeal. *In re*

*Bank of New England Corp.,* 218 B.R. at 653. Appellants also fail to make substantive arguments regarding how the reversal of the bankruptcy court's order on *res judicata* grounds materially advances the termination of the litigation; rather, Appellants merely repeat the conclusory assertion that application of the doctrine would end the case. Because Appellants have failed to identify claims and parties with sufficient particularity to determine what, if any, preclusive effect past judgments might have, this bald contention is unpersuasive to the Court.

**III. Conclusion**

After reviewing the transcript and pleadings, the Court **CONCLUDES** that the bankruptcy court's order denying judgment for Defendants/Appellants, on the basis of judicial estoppel, equitable estoppel, and *res judicata,* does not raise a controlling issue of law that warrants immediate interlocutory appeal because Appellants have failed to demonstrate the existence of any substantial ground for difference of opinion. By denying the motion for judgment on the pleadings, the bankruptcy judge merely indicated, while viewing the pleadings (which contain factual allegations regarding nondisclosure of claims with which he was very familiar) in the light most favorable to the Plaintiffs/Appellees in this adversary proceeding, that it appeared that Plaintiffs/Appellees had sufficiently alleged the elements of claims that could go forward against Defendants/Appellants. The bankruptcy court's decision assures that Plaintiffs/Appellees' claims and Defendants/Appellants' defenses will be heard on the merits. *See, e.g., In re National Office Products, Inc.,* 116 B.R. at 21. "After a hearing on the merits, the bankruptcy court will be in a better position to decide" whether or not to permit Plaintiffs/Appellees to continue pursuing their claims against Defen-

dants/Appellants. *Id.* This Court is in no better position, in an appellate posture, to decide the issues before a decision on the merits is issued by the bankruptcy court.

### IV. Order

It is **ORDERED** that Appellants' Motion for Leave to Appeal from the Bankruptcy Court's Interlocutory Order denying Appellants' Motion for Judgment on the Pleadings be, and it is hereby, **DENIED.** It is further **ORDERED** that Appellants' Motion for Oral Argument be, and it is hereby, **DENIED.** It is further **ORDERED** that Appellees' Motion to Dismiss the Appeal be, and it is hereby, **GRANTED.**